UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHELSEA MCPHERSON,<br><br>       Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:15-cv-05363-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

   Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

   On May 22, 2012, plaintiff protectively filed applications for disability insurance and SSI benefits, alleging in both applications she became disabled beginning January 1, 2003. *See* Dkt. 8, Administrative Record ("AR") 15. These applications were denied upon initial administrative

ORDER - 1

review on August 22, 2012, and on reconsideration on October 31, 2012. *See id.* A hearing was held before an administrative law judge ("ALJ") on September 13, 2013, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 32-70.

In a decision dated September 20, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 12-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 1, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-6; 20 C.F.R. § 404.981, § 416.1481. On June 8, 2015, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on August 11, 2015. *See* Dkt. 8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating plaintiff's severe impairments; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; (4) in assessing plaintiff's residual functional capacity ("RFC"); (5) in evaluating plaintiff's age category under the Social Security regulations; and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.[1] For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating plaintiff's severe impairments and in assessing plaintiff's RFC – and thus in finding

---

[1] Defendant argues that plaintiff did not follow the briefing requirements in the Court's Scheduling Order by failing to list the errors alleged on page one of the opening brief, and that the Court should therefore decline to consider or rule upon the issues plaintiff outlined on page two. The Scheduling Order states that "[b]eginning on page one, plaintiff shall list the errors alleged." Dkt. 11, p. 2. On page one of the opening brief, plaintiff fit four lines of an introductory paragraph requesting relief that continued onto page two, immediately followed by a separate section listing the errors alleged. *See* Dkt. 12, pp. 1-2. While technically not within the letter of the Scheduling Order, plaintiff did not violate the spirit thereof, which asked plaintiff to outline all alleged errors at the beginning of the opening brief, rather than raising new errors for the first time in the body of the argument section. Therefore, the Court will consider plaintiff's alleged errors.

ORDER - 2

plaintiff to be capable of performing other work – and therefore in determining her to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (*citing Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (*quoting*

ORDER - 3

*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[2]

I.       The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step and the sequential evaluation process ends. *See id.* To be found disabled, a claimant must have a "physical or mental impairment" that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508, § 416.908.

At step two of the sequential disability evaluation process, "the medical severity" of a claimant's impairments is considered. 20 C.F.R. 404.1520(a)(4)(ii), § 416.920(a)(4)(ii). If the claimant has no "severe medically determinable" impairment, then he or she will be found not disabled. *Id.* An impairment is "not severe" if it does not "significantly limit [the claimant's] mental or physical abilities to do basic work activities." 20 C.F.R. § 404.1521(a), § 416.920(a); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), §

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

416.921(b); SSR 85- 28, 1985 WL 56856, at *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff's degenerative disk disease, obesity, posttraumatic stress disorder, panic disorder and mood disorder to be severe impairments. *See* AR 18. The ALJ went on to find, however, that although plaintiff "testified to additional issues with migraine headaches," based on "the objective medical findings" in the record her migraines were "not medically determinable." AR 18-19. Plaintiff argues the ALJ erred in so finding. The Court agrees.

At the hearing, plaintiff testified that with medication she usually gets a migraine every week or every other week, lasting for at least half a day and sometimes up to a full day or a day and a half. *See* AR 41, 43-44; *but see* AR 44 (testifying that she experiences a migraine "[a]t least a couple days a week"). She testified that when she experiences a migraine, she has "to lay down with a cold rag on [her] eyes after taking" her medication, and that "depend[ing] on the severity" of the migraine it can "prevent [her] from doing anything," including with respect to being able to focus and concentrate. AR 44.

Although the medical record is sparse with respect to evidence of migraine headaches, in

ORDER - 5

a late November 2008 progress note, they were listed as a chronic problem (*see* AR 338), and in mid-May 2013, plaintiff presented to the emergency room with a headache that was reported to be "throbbing in nature, associated with nausea, vomiting, and light sensitivity" (AR 723). At that emergency room visit, plaintiff stated that her headache was "similar to prior headaches that she has had, and that she has carried the diagnosis of migraine headaches for some time." *Id.* Plaintiff was diagnosed with a "[h]eadache and nausea and vomiting, consistent with prior episodes of migraine headache." AR 724.

In determining whether a claimant is disabled, in addition to objective medical evidence – including medical opinion evidence – the Commissioner considers the claimant's pain and other symptoms, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), § 416.929(a); *see also* 20 C.F.R. § 404.1527(a), (b), § 416.927(a), (b). To that end, the Commissioner will consider "all of [a claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant] . . . may provide about how the symptoms affect [his or her] activities of daily living and . . . ability to work." 20 C.F.R. § 404.1529(a), § 416.929(a). Such evidence, accordingly, also may be used "to show the severity" of the claimant's impairments. 20 C.F.R. § 404.1513(d), § 416.913(d); *see also* 20 C.F.R. § 404.1529(a), § 416.929(a).

While a claimant's "statements about [his or her] pain or other symptoms will not alone establish" disability, and while there also thus must be objective medical evidence that shows the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged" (20 C.F.R. § 404.1529(a), § 416.929(a)), those statements still must be considered in determining whether the claimant's impairments are severe. Such consideration is particularly important in the context of migraines, given that as one court has noted "there exists

ORDER - 6

no objective clinical test which can corroborate" their existence. *Groff v. Comm'r of Social Sec.*, 2008 WL 4104689, at *7 (N.D.N.Y. Sept. 3, 2008). As that court further noted:

> [t]he cause [of a migraine] is unknown and the pathophysiology is not fully understood. . . . The mechanism for migraines is not well defined, but several triggers are recognized[, including] insomnia, barometric pressure change, and hunger. . . . Symptoms usually follow a pattern in each patient. . . . The patient may have attacks daily or only once every several months. Diagnosis is based on the symptom patterns when there is no evidence of intracranial pathologic changes. Migraine is more probable when the patient has a family history of migraine. . . . No diagnostic tests are useful, except to exclude other causes. Treatment depends on the frequency of attacks and the presence of comorbid illness. In general, treatment can be classified as prophylactic, abortive, or analgesic.

*Id.* at *8 (quoting *The Merck Manual* 1376 (17th ed. 1999)). Accordingly, a migraine diagnosis "is dependent upon the patient's description of symptom patterns and the ruling out of other conditions." *Id.* Other courts similarly have recognized the difficulty in establishing migraines as a medically determinable impairment based on objective factors. *See, e.g., Walker v. Colvin*, 2014 WL 794261, at *6-8 (N.D. Utah Feb. 27, 2014); *Abdon v. Astrue,* 2010 WL 5391452, at *5 (E.D. Ky. Dec. 22, 2010); *Federman v. Chater*, 1996 WL 107291, at *2 (S.D.N.Y. Mar. 11, 1996); *McCormick v. Sec'y of Health & Human Servs.,* 666 F.Supp. 121, 123 (E.D. Mich. 1987), *aff'd,* 861 F .2d 998 (6th Cir. 1988).

In *Groff*, for example, given that the plaintiff was diagnosed with a migraine condition and had been treated for it, the ALJ was found to have erred in failing to find the existence of a medically determinable severe impairment and in failing to consider the plaintiff's subjective complaints. *See* 2008 WL 4104689, at *8; *see also Walker*, 2014 WL 794261, at *8. Likewise, in this case the record contains evidence of a diagnosis of migraines – or headaches consistent with a history thereof – on at least two occasions, as well as evidence that plaintiff has been treated for that condition. Accordingly, as in *Groff* and *Walker*, here too the Court finds the ALJ erred in

ORDER - 7

determining plaintiff's migraine headaches were not a medically determinable impairment on the basis of a lack of objective medical findings in the record, and thus also in failing to consider her specific subjective complaints regarding that condition.

Relying on the Ninth Circuit's recent decision in *Britton v. Colvin*, 787 F.3d 1011 (9th Cir. 2015), defendant argues a diagnosis of headaches must be based on independent medical evidence, and not merely on a claimant's own reporting. Specifically, defendant notes that in *Britton* the Court of Appeals found "[t]here was no independent medical evidence establishing that [the plaintiff] suffers from migraines" to the extent alleged, because the medical expert who had "testified to this effect, . . . relied exclusively on [the plaintiff's] testimony." *Id.* at 1013-14. What defendant fails to mention, however, is that the Ninth Circuit qualified that last statement by expressly adding the phrase: "which the [ALJ] determined was not credible as to the severity or frequency of her conditions." *Id.* at 1014.

*Britton* thus merely stands for the uncontroversial proposition that where a claimant's testimony has been discredited, medical opinion evidence based on such discredited testimony properly may be discounted as well. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). Defendant points out the ALJ in this case found plaintiff to be less than fully credible concerning her subjective complaints, arguing that not only has plaintiff failed to sufficiently challenge the ALJ's adverse credibility determination, but that determination was in fact reasonable. The ALJ gave three reasons for discounting plaintiff's credibility: the medical evidence in the record concerning plaintiff's degenerative disk disease was not consistent with her allegations; her mental health symptoms improved with treatment; and her reported activities shed doubt on her allegations. *See* AR 22-23.

In challenging the ALJ's credibility determination, plaintiff asserts that because the ALJ

ORDER - 8

erred in evaluating the medical evidence in the record and the ALJ's credibility determination was based on that improper evaluation, that credibility determination was improper as well. *See* Dkt. 12, p. 8. Plaintiff, however, has failed to show that any alleged error in the ALJ's evaluation of the medical evidence necessarily calls into question the validity of any of the specific reasons noted above that the ALJ gave for discounting her credibility. This is particularly true given the similarly general nature of plaintiff's challenge to the ALJ's evaluation of the medical evidence. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed).

That being said, plaintiff's failure to mount a sufficient challenge to the ALJ's adverse credibility determination does not prevent the Court from nevertheless finding harmful error in this instance. To discount a claimant's testimony, an ALJ "must state *which* [such] testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 917 (9th Cir. 1993) (emphasis added); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Accordingly, as the District Court for the Eastern District of California recently noted in a case that is of significant relevance here:

> . . . There is nothing in the ALJ's decision that suggests that the migraine symptoms were considered, nor does the evidence the ALJ found to undermine Plaintiff's credibility bear any relation to her migraines. Because the ALJ's decision is devoid of any discussion related to Plaintiff's migraines, it is unclear that the ALJ's credibility determination encompassed any consideration of Plaintiff's lay statements regarding her migraines. While the basis for rejecting Plaintiff's statements regarding her severe conditions was not challenged before this Court, Plaintiff's argument that the ALJ ignored the evidence related to her migraines necessarily encompasses the ALJ's credibility determination with respect to Plaintiff's testimony about her migraine symptomatology.

*Quintero v. Colvin*, 2014 WL 4968269, at *8 (E.D. Cal. Sept. 29, 2014).

In this case, as noted above the ALJ did provide three reasons for discounting plaintiff's

ORDER - 9

credibility. However, those reasons either were irrelevant to plaintiff's complaints concerning her migraine headaches and related symptomatology, or were not supported by the substantial evidence in the record. Thus, for example, the fact that the medical evidence may not have been consistent with plaintiff's allegations concerning her degenerative disk disease or that plaintiff's mental health condition improved with treatment, says nothing about the credibility of plaintiff's testimony regarding her migraine headaches. Nor does the evidence in the record concerning her activities indicate she performed them at a frequency or to an extent necessarily inconsistent with that testimony. *See* AR 258-65, 290-96, 610; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284.

Plaintiff has the burden of establishing the alleged error resulted in actual harm. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his "substantial rights," which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). An error will be deemed harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

If an ALJ finds a claimant suffers from one or more severe impairments at step two, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." *Quintero*, 2014 WL 4968269, at *9 (citing *Smolen*, 80 F.3d at 1290); *see also* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without

ORDER - 10

regard to whether any such impairment, if considered separately, would be of sufficient severity."), § 416.923; 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'."), § 416.945(a)(2). Thus, if an ALJ properly "accounts for resulting limitations later in the sequential process, any error in finding the impairment non-severe at [step two] is harmless." *Quintero*, 2014 WL 4968269, at *9 (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Again, in a situation substantially similar to the one at hand, the district court in *Quintero* noted:

> Here, the ALJ resolved [step two] in Plaintiff's favor by finding she had four severe impairments including status post bilateral total knee replacement, obesity, anxiety, and depression. . . . However, there is nothing in the ALJ's decision to indicate that Plaintiff's migraine impairment was considered at the later steps of the sequential evaluation such that the Court can conclude the error at [step two] was harmless. The ALJ's discussion of the medical evidence related only to Plaintiff's severe conditions, ignoring references to prescription drug treatment for migraines and a diagnosis of migraines. Further, as discussed above, the ALJ's credibility determination appears relevant only to the conditions the ALJ found severe.
>
> In sum, without a single reference to Plaintiff's allegations and treatment for migraines in the ALJ's decision, the Court is not convinced that the ALJ adequately considered Plaintiff's migraine condition at the later stages of the sequential evaluation.

*Id.* This Court shares the *Quintero* court's same doubt concerning the ALJ's decision in this case (*see* AR 19-26), and thus finds plaintiff met her burden of establishing harmful error here.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of [the sequential evaluation] process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related

ORDER - 11

activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four of the evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* The ALJ thus must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that plaintiff had the RFC to perform a modified range of light work with certain additional non-exertional limitations. *See* AR 20. However, because as discussed above the ALJ erred in evaluating the evidence in the record concerning plaintiff's migraine headaches, and because that error was not harmless, the ALJ's RFC assessment does not necessarily completely and accurately describe all of plaintiff's functional capabilities or to be supported by substantial evidence. Here too, therefore, the ALJ's erroneous RFC assessment cannot be said to be harmless.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a

ORDER - 12

vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. *See* AR 65-67. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 25-26. But because as discussed above the ALJ committed harmful error in evaluating the evidence in the record and in assessing plaintiff's RFC, the hypothetical question also cannot be said to completely and accurately describe all of plaintiff's functional capabilities, and therefore the vocational expert's testimony and the ALJ's reliance thereon to find plaintiff not disabled cannot be said to be supported by substantial evidence and or to be free of harmful error as well.

ORDER - 13

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because as discussed above issues still remain in regard to the evidence in the record concerning the severity of plaintiff's migraine headaches, and the impact that condition has on her RFC and thus on her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the

ORDER - 14

findings contained herein.

DATED this 2nd day of November, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15